1  Neel Chatterjee (SBN 173985)
   *nchatterjee@goodwinlaw.com*
2  James Lin (SBN 310440)
   *jlin@goodwinlaw.com*
3  **GOODWIN PROCTER** LLP
   135 Commonwealth Drive
4  Menlo Park, California 94025
   Tel.: +1 650 752 3100
5

6  *Attorneys for BUILDZOOM, INC.*

7

8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11                      **SAN FRANCISCO DIVISION**

12

| | |
|---|---|
| 13  INNOVATIVE DESIGN BUILD, INC.<br>individually and on behalf of others similarly<br>14  situated, | Case No. 3:18-cv-01330 |
| | **DEFENDANT'S MOTION TO DISMISS**<br>**CLAIMS FOR LACK OF SUBJECT** |
| 15                    Plaintiff, | **MATTER JURISDICTION OR, IN THE**<br>**ALTERNATIVE, TO STAY** |
| 16           v. | **PROCEEDINGS PENDING RESOLUTION**<br>**OF ARBITRATION** |
| 17  BUILDZOOM, INC., | |
| 18                    Defendant. | Date of Filing:        April 17, 2018 |
| 19 | Hearing Date:       June 1, 2018<br>Hearing Time:       2:00 PM |
| 20 | Courtroom:            G, 15th Floor<br>Judge:                   Hon. Joseph C. Spero |
| 21 | |
| 22 | Filed/Lodged Concurrently with:<br>1.  Declaration of Jiyan Wei |
| 23 | 2.  Request for Judicial Notice in Support of<br>Defendant's Motion to Dismiss Claims for Lack |
| 24 | of Subject Matter Jurisdiction Or, in the<br>Alternative, To Stay Proceedings Pending |
| 25 | Resolution of Arbitration |

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS, OR COMPEL

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 1, 2018 at 2:00 p.m., or as soon thereafter as counsel may be heard, Defendant BuildZoom, Inc. will bring for hearing before the Honorable Joseph Spero, in Courtroom G, 15th Floor, at the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, its Motion To Compel Arbitration And To Dismiss Claims For Lack Of Jurisdiction Or, In The Alternative, To Stay Proceedings Pending Resolution Of Arbitration.

Defendant requests that the Court dismiss Plaintiff Innovative Design Build, Inc.'s Complaint without prejudice because the parties agreed (1) to arbitrate all disputes between them—including disputes as to arbitrability—under the rules of the American Arbitration Association, (2) to waive the right to trial, and (3) to not participate in class actions. Should the Court decline to dismiss Plaintiff's Complaint, Defendant requests that, pursuant to the Federal Arbitration Act and applicable case law, the litigation be stayed pending the outcome of arbitration. *See* 9 U.S.C. § 3; *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Civil Local Rule 7-4(a)(3), BuildZoom sets forth the following statement of issue to be decided:

1.    Whether the Court should compel the parties to arbitrate this dispute and either (1) dismiss Plaintiff's Complaint without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1), or (2) stay the litigation pending the outcome of arbitration pursuant to the Federal Arbitration Act and applicable case law, because the parties agreed (i) to arbitrate all disputes between them—including disputes as to arbitrability—under the rules of the American Arbitration Association, (ii) to waive the right to trial, and (iii) to not participate in class actions.

DEFENDANT'S MOTION TO DISMISS
AND TO COMPEL ARBITRATION

Case No. 3:18-cv-01330

## **TABLE OF CONTENTS**

**Page**

**NOTICE OF MOTION AND MOTION TO DISMISS, OR COMPEL**.........................................**i**

**INTRODUCTION**.................................................................................................................**1**

**STATEMENT OF RELEVANT FACTS**.............................................................................**1**

        A.     BuildZoom's Website ............................................................... 1

        B.     Plaintiff's Use of BuildZoom's Website.................................. 3

        C.     Plaintiff's Complaint................................................................ 5

**ARGUMENT** .....................................................................................................................**5**

    I.      The Court Has The Authority To Dismiss Plaintiff's Claims And Compel Arbitration.......................................................................................................**5**

    II.     The Parties Agreed To An Enforceable Arbitration Agreement. ..................**6**

        A.     Plaintiff Entered Into a Binding Agreement to Arbitrate with BuildZoom. .............................................................................. 7

        B.     The Parties' Agreement Included a Class Action Waiver. .............. 9

    III.    The Parties' Arbitration Agreement Applies to Questions of Arbitrability.................**9**

    IV.    Plaintiff's Claims Fall Within the Scope of the Agreement to Arbitrate....................**10**

    V.     Plaintiff's Lawsuit Should Be Dismissed or Stayed. ..................................**11**

**CONCLUSION** ................................................................................................................**12**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bernal v. Sw. & Pac. Specialty Fin., Inc.*,
  No. C 12-05797.................................................................................9, 10

*Crawford v. Beachbody, LLC*,
  No. 14cv1583-GPC (KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)..............................7, 8

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985)....................................................................................6

*DeVries v. Experian Info. Sols., Inc.*,
  No. 16-cv-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ......................................7, 8

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F.Supp.3d 1155 (N.D. Cal. 2016) ...................................................................7

*Filimex, L.L.C. v. Novoa Invs., L.L.C.*,
  No. CV 05-3792-PHX-SMM, 2006 WL 2091661 (D. Ariz. July 17, 2006) ...............................6

*Kam-Ko Bio-Pharm Trading Co., Ltd-Austl. v. Mayne Pharma (USA) Inc.*,
  560 F.3d 935 (9th Cir. 2009) ..........................................................................11

*Kilgore v. KeyBank Nat'l Ass'n*,
  673 F.3d 947 (9th Cir. 2012) ..........................................................................11

*LegalForce RAPC WorldWide, P.C., et al. v. LegalZoom.com, Inc.*,
  No. 17-cv-07194-MMC, 2018 WL 1730333 (N.D. Cal. April 10, 2018) ..............................7, 8

*Lewis v. UBS Fin. Servs. Inc.*,
  818 F.Supp.2d 1161 (N.D. Cal. 2011) ...................................................................6

*Loewen v. Lyft, Inc.*,
  129 F. Supp. 3d 945 (N.D. Cal. 2015) ..................................................................11

*Madden v. Kaiser Found. Hosp.*,
  17 Cal.3d 699 (1976) ....................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*,
  460 U.S. 1 (1983)................................................................................6, 10, 11

*Nguyen v. Barnes & Noble, Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ...........................................................................7

*Options Nat'l Fertility Registry v. Am. Soc'y for Reproductive Medicine*,
   No. C 07-5238 JF (HRL), 2008 WL 5115036 (N.D. Cal. Dec. 3, 2008)........................................3

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) ...............................................................................................9

*Shetty v. Cwalt, Inc.*,
   Case No. 17-CV-02980-LHK, 2017 WL 3394161 (N.D. Cal. Aug. 8, 2017) ...............................3

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988) ...............................................................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 2650689 (N.D. Cal. July 6, 2011)............................................................................11

**Statutes**

9 U.S.C. §§ 2, 3, 4........................................................................................................5, 6, 10, 12

Cal Civ. Code § 2299........................................................................................................8

**Other Authorities**

Commercial Arbitration Rules and Mediation Procedures, American Arbitration
   Association, https://www.adr.org/commercial .............................................................10

**INTRODUCTION**

having agreed to arbitrate all of its disputes with Defendant BuildZoom, Inc., Plaintiff brings this lawsuit in federal court.  Moreover, Plaintiff purports to bring this lawsuit as a class action, even though it previously agreed to resolve any and all of its disputes with Defendant on an individual basis.  Plaintiff does so without ever having attempted to raise its issues directly with Defendant. Defendant respectfully asks this Court to hold Plaintiff to its prior contractual agreements, order arbitration of Plaintiff's claims, and dismiss this lawsuit.

Defendant now moves pursuant to Federal Rule of Civil Procedure 12(b)(1) for an order dismissing the Complaint.  Alternatively, Defendant moves the Court to compel arbitration and to stay this proceeding in its entirety pending the resolution of arbitration.

**STATEMENT OF RELEVANT FACTS**

**A.     BuildZoom's Website**

Defendant BuildZoom, Inc. ("BuildZoom")  provides a service that enables a user to search for, and connect with, local building contractors.  BuildZoom operates a website at www.BuildZoom.com that allows BuildZoom's users to search for building contractors that may be well-suited to the user's needs.  Users of the BuildZoom website can freely review detailed information about a potential contractor on that contractor's BuildZoom profile page, including that contractor's work history and reviews written by other BuildZoom users.

Once a user chooses a contractor and seeks to use the BuildZoom platform to contact them, that user must fill out and submit a Service Request through the website.  To submit a Service Request, the user must click through a sequence of screens and enter information —such as the type of job that the user is requesting and its date—in response to prompts.  During that process, one screen requires confirmation that "[b]y clicking continue, you agree to our Terms of Service, and

authorize BuildZoom and its partners to send automated calls and text messages to the phone

number provided above." *See* Decl. Wei, at Exhibit A.  The phrase "Terms of Service," located

directly below the "CONTINUE" button, is in blue, indicating that it is an active hyperlink that the

user can click on to be directed to a page displaying the full language of BuildZoom's Terms of

Service.  A BuildZoom user cannot complete the Service Request without agreeing to the

BuildZoom Terms of Service.

     The Terms of Service in effect on August 10, 2016 (the date on which Plaintiff affirmed its

agreement to the Terms of Service) contained an Arbitration Agreement that stated, in relevant part:

> THIS TERMS OF SERVICE CONTAINS AN ARBITRATION AGREEMENT, WHICH WILL, WITH LIMITED EXCEPTION, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION. UNDER THE ARBITRATION AGREEMENT, (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST BUILDZOOM ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, AND (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN INDIVIDUAL BASIS.

> This Section is referred to in this Terms of Service as the "Arbitration Agreement." You agree that any and all disputes or claims that have arisen or may arise between you and BuildZoom, whether arising out of or relating to these Terms of Service (including any alleged breach thereof), the Services, any advertising or any aspect of the relationship or transactions between you and BuildZoom, shall be resolved exclusively through final and binding arbitration, rather than a court, in accordance with the terms of this Arbitration Agreement, except that you may assert individual claims in small claims court, if your claims qualify. Further, this Arbitration Agreement does not preclude you from bringing issues to the attention of federal, state, or local agencies, and such agencies can, if the law allows, seek relief against us on your behalf. You agree that, by entering into this Terms of Service, you and BuildZoom are each waiving the right to a trial by jury or to participate in a class action. Your rights will be determined by a neutral arbitrator, not a judge or jury. The Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement.

*See* Decl. Wei, at Exhibit B.  The BuildZoom Terms of Service in effect on August 10, 2016 also

DEFENDANT'S MOTION TO DISMISS
AND TO COMPEL ARBITRATION                        Case No. 3:18-cv-01330

included the following waiver of collective action:

> YOU AND BUILDZOOM AGREE THAT EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION OR PROCEEDING. UNLESS BOTH YOU AND BUILDZOOM AGREE OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, OR CLASS PROCEEDING. ALSO, THE ARBITRATOR MAY AWARD RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF NECESSITATED BY THAT PARTY'S INDIVIDUAL CLAIM(S).

*See* Decl. Wei, at Exhibit B.

## B.     Plaintiff's Use of BuildZoom's Website

Brian Letulle has been a Vice President of Plaintiff, Innovative Design Build, Inc. since at least 2007.[1]  On August 10, 2016,  Mr. Letulle accessed BuildZoom's website on behalf of Plaintiff. Specifically, Mr. Letulle logged onto the BuildZoom website and identified his company in the "contractor" field as Innovative Design Build, Inc., the Plaintiff in this action.   The Plaintiff, through Mr. Letulle, then began the steps necessary to submit a Service Request, navigating and entering the information requested for each of the screens required for the Request's submission.  In the description of work, the Plaintiff stated the following:

---

[1] The Plaintiff, Innovative Design Build, Inc., has listed Brian Letulle as its Vice President in its initial corporate filings in October 2007 and in each of its annual reports filed with the Florida Secretary of State since 2008.  See Request for Judicial Notice at Exhibit 1, *available at http://search.sunbiz.org/Inquiry/CorporationSearch/ByName* (State of Florida Division of Corporations website).   It is appropriate for the Court to take judicial notice of corporate filings with state secretaries of state.  *See, e.g., Shetty v. Cwalt, Inc.*, Case No. 17-CV-02980-LHK, 2017 WL 3394161 at *2 (N.D. Cal. Aug. 8, 2017) (taking judicial notice of filings with California Secretary of State); *Options Nat'l Fertility Registry v. Am. Soc'y for Reproductive Medicine*, No. C 07-5238 JF (HRL), 2008 WL 5115036 at *1 (N.D. Cal. Dec. 3, 2008) (taking judicial notice of Alabama Secretary of State records).

DEFENDANT'S MOTION TO DISMISS
AND TO COMPEL ARBITRATION                                    Case No. 3:18-cv-01330

> Hello my name is Brian, and I am looking for a sub-contractor that do roofing work. I am a small general contractor looking for DEPENDABLE roofing sub contractor. I have 3 jobs ready for bid/budget #. If you are interested and available please contact me. Thanks!

*See* Decl. Wei, at Exhibit C. Mr. Letulle provided his business email address, "designbuild1@mac.co[m]," as the contact email address. *See* Decl. Wei, at Exhibit F (landing page of Innovative Design Build website, listing "designbuild1@mac.com" as business contact email).

Mr. Letulle was then prompted to enter a phone number and agree to BuildZoom's Terms of Service by clicking on the "CONTINUE" button:



> CONTINUE
>
> By clicking continue, you agree to our Terms of Service, and authorize BuildZoom and its partners to send automated calls and text messages to the phone number provided above. Consent is not a condition of purchase.

*See* Decl. Wei at Exhibit A. The Plaintiff then entered a phone number and agreed to BuildZoom's Terms of Service by clicking on the "CONTINUE" button. The phone number that Letulle entered is the business phone number that Innovative Design Build provides to prospective customers on its website. *Id*; *see also* Decl. Wei, at Exhibit F (landing page of Innovative Design Build website). After clicking through the remaining required screens, Mr. Letulle submitted his Service Request for Plaintiff. *Id.*

The Plaintiff was apparently a satisfied user of BuildZoom.[2] On April 24, 2017, the Plaintiff again submitted a Service Request for a sub-contractor. Once more the Plaintiff used the listed

---

[2] On September 12, 2016, for example, Plaintiff confirmed with BuildZoom that it had hired a roofing contractor that BuildZoom had identified for it. Mr. Letulle was enthusiastic about the service, even stating a couple weeks prior, "Love build zoom." *See* Decl. Wei, at Exhibit E.

DEFENDANT'S MOTION TO DISMISS
AND TO COMPEL ARBITRATION                    Case No. 3:18-cv-01330

business email "designbuild1@me.co[m],"[3] and stated as follows in the description of work:

> My block and stucco mason of 10 years has closed up shop and I am looking for a new one.  I have a full set of plans, slab is poured and I can meet at job. I am GC for project.  If you are interested, please message or call.

*See* Decl. Wei, at Exhibit D.

### C.      Plaintiff's Complaint

Despite Plaintiff having agreed to BuildZoom's Terms of Service—which require arbitration of "any and all disputes or claims that have arisen or may arise" between it and BuildZoom—Plaintiff filed a Complaint against BuildZoom in this Court on February 28, 2018.  Dkt. No. 1.  Plaintiff has styled its Complaint as a putative class action, even though, under the Terms of Service, Plaintiff also agreed not to pursue any "class or representative action or proceeding" against BuildZoom.  The Complaint alleges that BuildZoom's website infringes contractors' trademark rights by providing the contractors' names in search results but never actually connecting website users to those contractors.  Plaintiff alleges that BuildZoom has violated the Lanham Act and the California Business & Professions Code, and has engaged in common law, contributory, and vicarious trademark infringement.

## ARGUMENT

### I.      The Court Has The Authority To Dismiss Plaintiff's Claims And Compel Arbitration.

The Court has the authority to dismiss the Complaint in favor of arbitration, or alternatively to stay the case in its entirety and compel arbitration, pursuant to the Federal Arbitration Act ("FAA").

---

[3] Depending on when an Apple user created an email account, the user can use both a @mac.com and a @me.com to administer the account.  "iCloud: About your @icloud.com, @me.com, and @mac.com email addresses," Apple, available at https://support.apple.com/en-us/HT201771, ("If you had a working @mac.com email address as of July 9, 2008, kept your MobileMe account active, and moved to iCloud before August 1, 2012, you can use @icloud.com, @me.com, and @mac.com email addresses with your iCloud account").

DEFENDANT'S MOTION TO DISMISS
AND TO COMPEL ARBITRATION                                      Case No. 3:18-cv-01330

Federal Rule of Civil Procedure 12(b)(1) empowers the Court to dismiss Plaintiff's claims. *See Filimex, L.L.C. v. Novoa Invs., L.L.C.*, No. CV 05-3792-PHX-SMM, 2006 WL 2091661, at \*2-3 (D. Ariz. July 17, 2006) (holding that Rule 12(b)(1) motion is a "procedurally sufficient mechanism to enforce the Arbitration Provision" and dismissing all claims that were properly subject to arbitration). The Federal Arbitration Act similarly empowers the Court to dismiss the Plaintiff's claims, or in the alternative to stay this case in its entirety pending arbitration. *Lewis v. UBS Fin. Servs. Inc.*, 818 F.Supp.2d 1161, 1165 (N.D. Cal. 2011) (citing 9 U.S.C. § 3).

The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co*., 460 U.S. 1, 24 (1983). "The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 131 S. Ct. at 1748. To that end, the FAA provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. §§ 3-4. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis original). Generally, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25.

## II.     The Parties Agreed To An Enforceable Arbitration Agreement.

In accessing the BuildZoom website and submitting a Service Request through its Vice

President and agent Mr. Letulle, Plaintiff agreed to BuildZoom's Terms of Service, including

agreement with BuildZoom's arbitration provision and class action waiver.  Thus, the Court should

dismiss Plaintiff's claims and compel arbitration on an individual basis.

    **A.**    **Plaintiff Entered Into a Binding Agreement to Arbitrate with BuildZoom.**

        In determining whether a valid arbitration agreement exists, federal courts apply ordinary

state-law principles that govern the formation of contracts.  *Nguyen v. Barnes & Noble, Inc.*, 763

F.3d 1171, 1175 (9th Cir. 2014).  The touchstone for all contracts, whether internet digital or old-

school paper, is mutual manifestation of assent, whether by written or spoken word or by conduct.

*In re Facebook Biometric Info. Privacy Litig.*, 185 F.Supp.3d 1155, 1164 (N.D. Cal. 2016).  In the

internet context, federal courts in California routinely uphold Terms of Service agreements, where,

as here, the Terms of Service are presented to a user via a hyperlink that appears alongside a button

that the user must click in order to proceed with the website's service.  *See, e.g., LegalForce RAPC

WorldWide, P.C., et al. v. LegalZoom.com, Inc.*, No. 17-cv-07194-MMC, 2018 WL 1730333 at *3

(N.D. Cal. April 10, 2018) (compelling arbitration where the text containing a "Terms of Service"

hyperlink was located above a purchase button and holding that clicking the button constituted

acceptance of those terms); *DeVries v. Experian Info. Sols., Inc.*, No. 16-cv-02953-WHO, 2017 WL

733096 at *6-7 (N.D. Cal. Feb. 24, 2017) (compelling arbitration where "[t]he text containing the

Terms and Conditions hyperlink was located directly above [the purchase] button and indicated that

clicking 'Submit Secure Purchase' constituted acceptance of those terms"); *Crawford v. Beachbody,

LLC*, No. 14cv1583-GPC (KSC), 2014 WL 6606563 at *3 (S.D. Cal. Nov. 5, 2014) (enforcing

Terms and Conditions where plaintiff was prompted by a "PLACE ORDER" button immediately

below the phrase, "By clicking Place Order below, you are agreeing that you have read and

understand the [Terms and Conditions].").

        In *DeVries v. Experian Info. Sols., Inc.*, for example, the plaintiff visited www.experian.com

DEFENDANT'S MOTION TO DISMISS
AND TO COMPEL ARBITRATION                   Case No. 3:18-cv-01330

to order a credit report.  2017 WL 733096 at *1.  The first screen of the Experian's order process prompted the plaintiff to provide background information such as his name, email, and address.  *Id*. The second screen presented the plaintiff with a "SUBMIT SECURE ORDER" button, located directly below text that read, "'Click "Submit Secure Order" to accept the Terms and Conditions above…"  *Id*. at *2.  The "Terms and Conditions" phrase was "in blue, indicating that [it was an] active hyperlink[] that the consumer could click to be directed to another webpage."  *Id*.  This Court found that the plaintiff had agreed to those Terms and Conditions and their arbitration provisions. *Id*. at *7.

Similar to the users in *DeVries v. Experian Info. Sols.*, *LegalForce RAPC WorldWide, P.C., et al. v. LegalZoom.com, Inc.*, and *Crawford v. Beachbody, LLC*, Plaintiff entered into an enforceable Terms of Service agreement with BuildZoom.  By clicking through the screens necessary to submit a Service Request, Plaintiff's Vice President and agent, Mr. Letulle, was twice shown a screen that unambiguously presented him with a hyperlink containing the BuildZoom Terms of Service and informed him that by clicking the "CONTINUE" button on that screen, he was agreeing to those Terms of Service.  And each time Plaintiff's agent accepted the Terms of Service.

Moreover, there can be no dispute that as a Vice President of Plaintiff,  Mr. Letulle was able to bind Plaintiff to BuildZoom's Terms of Service.  Cal Civ. Code § 2299 ("An agency is actual when the agent is really employed by the principal."); *Madden v. Kaiser Found. Hosp.*, 17 Cal.3d 699, 707 (1976) (rejecting argument that authority to agree to arbitration must be specifically conferred and stating that arbitration is a "'proper and usual' practice 'for effecting the purpose' of the agency"); *LegalForce RAPC WorldWide, P.C., et al. v. LegalZoom.com, Inc.*, 2018 WL 1730333 at *3 (finding that corporate plaintiff's employee bound the corporate plaintiff to an arbitration agreement where the employee clicked through defendant's screen containing hyperlinked terms of service).  On both August 10, 2016 and April 24, 2017, Mr. Letulle agreed to BuildZoom's Terms of

8

Service as a corporate officer and agent of Plaintiff—he used Plaintiff's business email address, Plaintiff's business phone number, and declared in the project description, "I am a small general contractor…" and "I am GC for project." Through Mr. Letulle's actions on August 10, 2016 and April 24, 2017, Plaintiff agreed to the BuildZoom Terms of Service.

### B.      The Parties' Agreement Included a Class Action Waiver.

The arbitration agreement within BuildZoom's Terms of Service, in effect on August 10, 2016, contained a waiver of class or representative action. Arbitration agreements that waive representative, collective, or class actions are valid and enforceable. *See, e.g. Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1274 (9th Cir. 2017) (enforcing a class action waiver, limited to non-PAGA claims, contained within an employee's bonus compensation arbitration agreement). By agreeing to BuildZoom's Terms of Service, Plaintiff has waived its ability to bring claims against BuildZoom in a class or representative action.

### III.      The Parties' Arbitration Agreement Applies to Questions of Arbitrability.

Plaintiff and BuildZoom expressly agreed "to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. C 12-05797 SBA, 2014 WL 1868787, *2 (N.D. Cal. May 7, 2014). The Arbitration Agreement states, in relevant part: "All issues are for the arbitrator to decide, including, but not limited to, issues relating to the scope, enforceability, and arbitrability of this Arbitration Agreement." Exhibit B. The Arbitration Agreement also states that arbitration will be administered "in accordance with [AAA Rules]," which provide that the arbitrator decides questions of arbitrability. *Id*. AAA Commercial Arbitration Rules and Mediation Procedures at R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement

9

or to the arbitrability of any claim or counterclaim.").[4]

Where, as here, there is "clear and unmistakable" evidence that the parties intended that the question of arbitrability be decided by an arbitrator, and there is "an agreement to follow . . . the AAA Rules—[which] provide for the arbitrator to decide questions of arbitrability, . . . the issue [of arbitrability] is decided by the arbitrator," unless the assertion of arbitrability is "wholly groundless." *Bernal*, 2014 WL 1868787 at *2-3 (citing cases). Here the assertion of arbitrability is well-grounded in the broad language of the Arbitration Agreement.

Finally, the Arbitration Agreement expressly states that "[t]he Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement." *See* Decl. Wei, at Exhibit B. Thus, in accordance with the FAA's "liberal federal policy favoring arbitration" (*Moses*, 460 U.S. at 24) and purpose "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings" (*Concepcion*, 131 S. Ct. at 1748), this Court should compel arbitration.[5]

## IV.     Plaintiff's Claims Fall Within the Scope of the Agreement to Arbitrate.

While the Terms of Service and incorporated AAA Rules of Arbitration assign questions of arbitrability, including the scope of the arbitration clause, to the arbitral tribunal, were the Court to reach the question, the scope of the arbitration clause plainly covers the claims alleged in the Complaint. By agreeing to the BuildZoom Terms of Service, Plaintiff agreed to arbitrate "any and

---

[4] The AAA Commercial Arbitration Rules and Mediation Procedures are available at https://www.adr.org/commercial.

[5] In addition, the arbitration must be conducted on behalf of the Plaintiff only.  ("YOU AND BUILDZOOM AGREE THAT EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION OR PROCEEDING. UNLESS BOTH YOU AND BUILDZOOM AGREE OTHERWISE, THE ARBITRATOR MAY NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, OR CLASS PROCEEDING.") (emphasis in original).  *See* Decl. Wei, at Exhibit B.

DEFENDANT'S MOTION TO DISMISS
AND TO COMPEL ARBITRATION                                          Case No. 3:18-cv-01330

all disputes or claims that have risen or may arise between [Plaintiff] and BuildZoom, whether

arising out of or relating to these Terms of Service (including any alleged breach thereof), the

Services, any advertising or any aspect of the relationship or transactions between [Plaintiff] and

BuildZoom." *See* Decl. Wei, at Exhibit B.  Plaintiff has alleged seven causes of action in its

Complaint. Each of the seven causes of action arises out of or relates to the BuildZoom Services, i.e.,

"BuildZoom.com, and the related services and applications offered by BuildZoom (including any

new features and applications, collectively, the 'Services')," and/or the "relationship or transactions

between [Plaintiff] and BuildZoom." *Id.*  "[T]he phrase 'arising out of or relating to' in an

arbitration agreement must be construed broadly, and the factual allegations at issue 'need only

touch matters covered by the contract containing the arbitration clause and all doubts are to be

resolved in favor of arbitration.'"  *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 965 (N.D. Cal. 2015)

(quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)); *In re TFT-LCD (Flat*

*Panel) Antitrust Litig.*, 2011 WL 2650689, at \*5 (N.D. Cal. July 6, 2011) ("[T]he language 'related

to' must be read broadly to encompass any matter that touches the contractual relationship between

the parties.  This must include matters that, while not arising directly under the contractual

relationship, are nevertheless related to it."); *see also Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947,

955 (9th Cir. 2012) ("Causes of action premised on statutory rights are subject to contractual

arbitration agreements just as are claims under the common law.").

## V.   Plaintiff's Lawsuit Should Be Dismissed or Stayed.

The Ninth Circuit has recognized that courts may, in their discretion, dismiss an action rather

than stay it where it is clear that the controversy will be resolved by arbitration.  *See Kam-Ko Bio-*

*Pharm Trading Co., Ltd-Austl. v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009);

*Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).  Because each and every of

Plaintiff's claims are subject to arbitration under the broad language of the BuildZoom Terms of

DEFENDANT'S MOTION TO DISMISS
AND TO COMPEL ARBITRATION

Case No. 3:18-cv-01330

1
2
3

Service—encompassing "any and all disputes or claims that have risen or may arise between [Plaintiff] and BuildZoom"—this entire action will be resolved by arbitration.  Dismissal without prejudice is therefore appropriate.

4
5
6
7
8
9

Alternatively, even if this action is not dismissed, Section 3 of the FAA mandates a stay of all claims submitted to arbitration.  9 U.S.C. § 3.  Thus, if the Court grants this motion to compel arbitration but declines to dismiss the case, the Court should stay the litigation in its entirety pending the outcome of arbitration.  *Concepcion*, 131 S. Ct. at 1748 ("[The FAA] requires courts to stay litigation . . . pending arbitration . . . in accordance with the terms of the agreement").

10

<u>**CONCLUSION**</u>

11
12
13

For the foregoing reasons, BuildZoom respectfully requests that the Court compel arbitration and dismiss or stay the case.

14
15

Dated: April 17, 2018                                          Respectfully submitted,

16
17
18
19
20

By:  */s/  Neel Chatterjee*
Neel Chatterjee (SBN 173985)
*nchatterjee@goodwinlaw.com*
James Lin (SBN 310440)
*jlin@goodwinlaw.com*
**GOODWIN PROCTER** LLP
135 Commonwealth Drive
Menlo Park, California 94025
Tel.: +1 650 752 3100

21
22
23
24
25
26
27
28

DEFENDANT'S MOTION TO DISMISS
AND TO COMPEL ARBITRATION                              Case No. 3:18-cv-01330

1

## **CERTIFICATE OF SERVICE**

2

3

        I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 17, 2018.

4

5
                                    /s/  *Neel Chatterjee*
                                    Neel Chatterjee

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28